IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PDC MACHINES INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-5399 |
| | : | |
| NEL HYDROGEN A/S | : | |
| *formerly known as* | : | |
| H2 LOGIC A/S, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                  **June 15, 2018**

Plaintiff PDC Machines Inc. (PDC) brings claims pursuant to the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836(b), and state law against Nel Hydrogen A/S (Nel), a longtime PDC customer, and Joshua Andrew Adams, a former PDC project engineer who is currently employed by Nel, arising out of Defendants' alleged misappropriation of PDC's trade secrets and other sensitive, confidential, and proprietary information relating to PDC's proprietary high pressure gas diaphragm compressor technology. Defendants have filed a partial motion to dismiss, seeking dismissal of five of the nine counts asserted in PDC's Complaint, including the DTSA claim. PDC has agreed to withdraw one of the five counts, but otherwise opposes the motion. For the reasons set forth below, the motion to dismiss will be granted as to the withdrawn count and denied as to the remaining counts.

**BACKGROUND**

PDC is a technology design and manufacturing company that provides engineered solutions for the specialty gas and chemical processing industries worldwide. According to the Complaint, PDC has spent 40 years and millions of dollars developing its proprietary high pressure gas diaphragm technology, and is the only company in the world that has developed a commercially successful high pressure gas compressor using a diaphragm technology. In 2008,

PDC entered into a contractual relationship with Nel, a "global, dedicated hydrogen company" based in Denmark, whereby PDC agreed to develop high pressure hydrogen gas diaphragm compressors for Nel.  *See* Compl. ¶¶ 25-26.  The parties' relationship was subject to a nondisclosure agreement (NDA) which prohibited Nel from engaging in any analysis, replication, or reverse-engineering of the PDC compressors.  Pursuant to the NDA, PDC has shared many trade secrets with Nel, including customer versions of PDC's proprietary computer software, schematic drawings, 3D models, calculations, descriptions of compressor features, technology and product performance data, and the PDC compressors themselves, which embody numerous trade secrets ascertainable only by reverse engineering or other analysis prohibited by the NDA.  Adams has also been privy to PDC's trade secrets and other confidential and proprietary information, having been integrally involved in the research, development, and design of PDC's high pressure hydrogen diaphragm compressors as a PDC project engineer from October 2007 until June 2011.  As part of his employment with PDC, Adams was subject to an NDA, which prohibits him from publishing, disclosing, disseminating, or using any of PDC's confidential information, including PDC's trade secrets, without PDC's express written consent.

PDC recently discovered that Adams is now working for Nel and that Nel has filed at least one patent application, on which Adams is listed as the inventor, claiming a high pressure diaphragm hydrogen compressor to be used in hydrogen refueling stations.  The compressor described in Nel's patent application is the same as PDC's hydrogen gas diaphragm compressor except for the shape of the gas chamber.  Although the patent application does not disclose the confidential processes and know-how needed to design and operate a high pressure hydrogen diaphragm compressor suitable for use in industrial applications, PDC understands that Nel professes to have designed such a compressor and is seeking to market hydrogen fueling stations

incorporating this technology to potential customers. PDC also understands that Defendants have attempted to recruit other PDC employees to work for Nel on its diaphragm compressor technology.

Given the investment of time and resources it took for PDC to develop its high pressure diaphragm compressor technology, and the inability of any of PDC's competitors to commercialize such technology despite decades of effort to do so, PDC believes Nel could not have independently developed a high pressure diaphragm compressor technology in the space of just a few years without making use of the PDC trade secrets in its possession. Similarly, PDC believes Adams could not have purported to invent the technology claimed in the Nel patent application without making unauthorized use and disclosure of the PDC trade secrets he learned either during his employment with PDC or through his subsequent employment with Nel. PDC thus maintains that Defendants have made, and continue to make, unauthorized use of PDC's trade secrets in designing, developing, manufacturing, and selling or offering for sale their high pressure hydrogen gas diaphragm compressors. *See* Compl. ¶¶ 50-52, 55-56.

In December 2017, PDC filed this action against Nel and Adams, asserting claims against both Defendants for violations of the DTSA, the Pennsylvania Uniform Trade Secrets Act (UTSA), 12 Pa. Cons. Stat. Ann. §§ 5301-5308, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Cons. Stat. Ann. §§ 201-1 et seq., and for conversion, unjust enrichment, conspiracy, and breach of contract. PDC also asserts a claim for breach of fiduciary duty of loyalty against Adams. Defendants have moved to dismiss PDC's statutory claims under the DTSA, the UTSA, and the UTPCPL, as well as PDC's conspiracy and breach of fiduciary duty claims. PDC has agreed to withdraw the UTPCPL claim, but opposes the balance of Defendants' motion.

**DISCUSSION**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The requirement that a claim be facially plausible "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The plaintiff must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of the plaintiff's claims. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Both the DTSA and the UTSA define misappropriation to include the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); 12 Pa. Cons. Stat. Ann. § 5302. Relying primarily on *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709 (E.D. Pa. Nov. 23, 2010), Defendants argue PDC has failed to state a claim for misappropriation under either statute because the Complaint fails to identify the particular trade secret or secrets that Defendants allegedly misappropriated. The Court disagrees. In *Bioquell*, two employees of a supplier of hydrogen peroxide decontamination equipment and services left the company and went to work for a competitor, notwithstanding the non-compete provisions of their employment agreements. *See id.* at *1-3. The former employer then sued the employees for, inter alia, violating the UTSA by wrongfully misappropriating confidential and proprietary information which the former

employer contended qualified as trade secrets. *See id.* at *6. The former employer also alleged the employees' new employer had induced the employees to engage in the misappropriation. *See id.* The defendants moved to dismiss the action, and the district court granted the motion as to the UTSA claims, observing:

> Not once does Plaintiff identify these trade secrets nor discuss how said secrets were allegedly wrongfully misappropriated. Moreover, Plaintiff fails to allege in what manner [the competitor] allegedly induced [the employees] to violate the Act. Plaintiff makes no effort to identify what conduct [the employees] engaged in which leads it to this conclusion that [Plaintiff's] proprietary information has been and will continue to be used for [the competitor's] benefit.

*Id.*

In this case, in contrast, the Complaint identifies in general terms the proprietary processes and designs that constitute PDC's trade secrets and alleges that both Nel and Adams had access to these trade secrets in the context of their business and employment relationships with PDC and pursuant to their respective NDAs with PDC. Although the Complaint does not specifically identify which of these trade secrets Defendants misappropriated, it explains how PDC believes Defendants used its trade secrets—i.e., to develop a high pressure hydrogen gas diaphragm compressor—and provides a factual basis for that belief, alleging that based on PDC's experience with the investment of time and resources necessary to develop a high pressure gas diaphragm compressor technology, and the inability of competitors who lack access to PDC's trade secrets to develop such technology despite decades of effort, it is implausible that Nel could have developed such technology in only a few years without exploiting PDC's trade secrets. These allegations are sufficient, at the pleading stage, to state a plausible misappropriation claim. *Cf. DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) (recognizing a trade secret plaintiff "may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating").

5

Defendants also argue PDC's claims for violations of the DTSA should be dismissed because the Complaint does not allege any specific acts of misappropriation on or after the statute's May 11, 2016, enactment date. Again, the Court disagrees. As Defendants note, the DTSA applies to "any misappropriation of a trade secret . . . for which any act occurs on or after the date of enactment of this Act." Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381-82 (2016); *see also, e.g.*, *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. 16-2499, 2017 WL 1105648, at *3 (E.D. Pa. Mar. 24, 2017). Although the statute does not reach misappropriation occurring entirely before the May 11, 2016, enactment date, it has been widely interpreted to reach a defendant's continued use of trade secrets after the enactment date, even if the secrets were acquired earlier. *See, e.g.*, *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674-75 (E.D. Pa. 2018) (observing that "one who acquired and used a trade secret before enactment of the DTSA and continues to use it after enactment is liable"); *Quintiles IMS Inc. v. Veeva Sys. Inc.*, No. 17-177, 2017 WL 4842377, at *4 (D.N.J. Oct. 26, 2017) (holding "allegations of pre-enactment acquisition of a trade secret coupled with post-enactment continued use are sufficient to sustain a claim under the [DTSA] at the motion to dismiss phase" (citation omitted)); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-2177, 2017 WL 1436044, at *4 (N.D. Cal. Apr. 4, 2017) ("Nothing suggests that the DTSA forecloses a use-based theory [of misappropriation] simply because the trade secret being used was misappropriated before the DTSA's enactment."); *Brand Energy*, 2017 WL 1105648, at *8 (finding "Congress clearly expressed its intent to apply the DTSA to continuing misappropriations that began prior to—but continued after—the DTSA's enactment"). To state a claim for continuing misappropriation, a plaintiff must allege some act

of misappropriation occurring on or after May 11, 2016. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017).

The misappropriation alleged in this case consists of Defendants' use and/or disclosure of PDC's trade secrets "to identify, design, develop, test, analyze, replicate, reverse engineer and/or manufacture high pressure hydrogen compressors that would be competitive with PDC's own compressors, to develop marketing efforts to customers and to otherwise effectuate a scheme to wrongfully misappropriate PDC's valuable Trade Secrets for their own competitive advantage and to PDC's detriment." Compl. ¶ 76. While Nel's filing of a Danish patent application relating to its competing compressor in May 2015 suggests that at least some of Defendants' misappropriation occurred prior to the DTSA's enactment date, Nel did not file its international patent application describing a diaphragm gas compressor that is almost identical to PDC's compressor until May 12, 2016, the day after the DTSA was enacted, and Defendants' design and development efforts are alleged to be ongoing. *See* Compl. ¶¶ 43-44, 55. At a minimum, the Complaint alleges Nel has "recently" begun marketing its compressor to potential customers, *see id.* ¶ 45, and that Adams, through his ongoing employment with Nel, "continues to aid Nel in using PDC's Trade Secrets," *id.* ¶ 72. Taken together, these allegations are minimally sufficient to allege post-DTSA enactment misappropriation at the pleading stage.

Defendants next argue PDC's civil conspiracy claim should be dismissed because the Complaint fails to allege that Defendants acted with the requisite malice. To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund*

*Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). "[M]alice, i.e., an intent to injure," is also an essential element of a civil conspiracy claim, and "[t]his unlawful intent must be absent justification." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Defendants argue PDC has failed to sufficiently allege the malice element of its conspiracy claim because it does not allege the sole purpose of the conspiracy was to injure PDC. PDC disputes that Defendants must have acted solely to injure PDC in order to be liable for conspiracy, and argues the Complaint sufficiently alleges that Defendants' motive was to injure PDC in any event.

The Pennsylvania Supreme Court addressed the malice requirement in *Thompson Coal Co. v. Pike Coal Co.*, *supra*, in which the plaintiffs—lessors of the mining rights in a tract of land—brought a civil conspiracy claim against a competitor who purchased the mining rights leased by plaintiffs, the sellers of those rights, and the purchasers' attorney, alleging the defendants had engaged in a conspiracy to injure the plaintiffs' business relationship and reputations. Affirming the grant of summary judgment in favor of the purchasers' attorney, the Supreme Court agreed with the lower courts that the claim failed for want of evidence of malice. Stressing that the intent to injure required to prove a conspiracy "must be absent justification," the court went on to explain that if the act in question "was bona fide done in the use of a man's own property * * * such legal justification would * * * exist not the less because what was done might seem to others to be selfish or unreasonable." 412 A.2d at 472 (quoting *Rosenblum v. Rosenblum*, 181 A. 583, 585 (Pa. 1935)). If, however, "the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights," legal justification would not exist. *Id.* (quoting *Rosenblum*, 181 A. at 585). Observing that there were "no facts of record which indicate[d] that [the attorney]

8

acted solely to injure [the plaintiffs]," but there were "many facts which indicate[d] that [the attorney] acted solely to advance the legitimate business interests of his clients and to advance his own interests," the court held summary judgment was properly entered for the attorney as the record "fail[ed] to evince any fact[] which would substantiate the allegation that [he] combined with [the other defendants] with the unlawful intent to injure [the plaintiffs]." *Id.* at 472-73.

The proper interpretation of *Thompson Coal* is a matter of some debate among federal district courts in Pennsylvania. As Defendants note, numerous courts in this district—including this Court—have interpreted the case as construing the malice element narrowly to "requir[e] proof that the *sole* purpose of the conspiracy is to cause harm to the party who has been injured." *Church Mut. Ins. Co. v. Alliance Adjustment Grp.*, No. 15-461, 2016 WL 3762713, at *5 (E.D. Pa. July 11, 2016) (citing *WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 WL 6788446, at *14 (E.D. Pa. May 13, 2005) (collecting cases)). Under this interpretation, "a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice." *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 248 (E.D. Pa. 2017) (collecting cases). A minority of courts have taken a different view, holding that "when improper actions form the basis for the civil conspiracy claim, then the injured party can adequately allege an intent to injure even if the conspirators also monetarily benefitted from the conspiracy." *Power Restoration Int'l, Inc. v. Pepsico, Inc.*, No. 12-1922, 2014 WL 1725041, at *6 (E.D. Pa. Apr. 30, 2014); *see also RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*, No. 04-4007, 2009 WL 1441578, at *32 (E.D. Pa. May 19, 2009) (noting "the fact that an action advances one's business interest is not sufficient to warrant summary dismissal" of a conspiracy claim for want of malice where the actions on which the conspiracy is based are unlawful); *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 411-12 (W.D. Pa.

9

2002) (holding that under *Thompson Coal*, malice is lacking where a defendant "act[s] for its own legitimate business purposes and any injury to the plaintiff [is] a mere secondary and unintended effect of the otherwise proper conduct," but malice may be inferred where a defendant knows its coconspirator's actions are unlawful, which suggests the plaintiff's injuries are "not simply an accidental side-effect of [the defendant's] otherwise legitimate business interests"); *cf. Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 454 n.4 (E.D. Pa. 2014) (noting the predominant interpretation of *Thompson Coal* as requiring a showing that the sole purpose of the conspiracy was to injure the plaintiffs may not be correct as the court in *Thompson* defined malice as requiring an "'intent to injure' that lacks 'justification,'" but did not address whether a defendant who acted with mixed motives might nevertheless be liable).

Given the *Thompson* court's definition of malice, this Court is persuaded that the fact that a defendant may benefit economically from improper actions undertaken as part of a conspiracy does not necessarily preclude a finding that the defendant acted with malice, and that the Complaint in this case sufficiently alleges malice on the part of the Defendants. The Complaint alleges Nel and Adams conspired to knowingly and intentionally misappropriate trade secrets they had agreed to protect under their respective NDAs with PDC so as to harm PDC's competitive advantage. *See* Compl. ¶ 133. This allegation is sufficient at the motion to dismiss stage to support the inference that Defendants intended to harm PDC without legal justification. *See Daniel Boone Area Sch. Dist.*, 187 F. Supp. 2d at 412 (holding malice could be inferred from allegations that brokerage firm sold derivatives to an investment advisor knowing the advisor's purchases were unlawful); *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 213 (Pa. Super. Ct. 2003) (holding an agreement between a radio station manager and his future employer to hire two of the station's sales representatives in violation of their non-compete agreements was made with

malice because it was made in reckless disregard of the station manager's duty of loyalty to his then-employer and the employer's contract rights with the sales representatives at a time when the station was short-handed, and resulted in a precipitous drop in the station's sales performance).

Finally, Defendants seek dismissal of PDC's breach of fiduciary duty claim against Adams based on the gist of the action doctrine. Under the gist of the action doctrine, a party may not "bring a tort claim for what is, in actuality, a claim for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014). The Pennsylvania Supreme Court has recently clarified that in evaluating whether a claim "is truly one in tort, or for breach of contract," the "critical determinative factor" is "the nature of the duty alleged to have been breached." *Id.* at 68.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* Put differently, "to determine whether an action is barred by the gist of the action doctrine, [the court] must examine the factual allegations and ask, '[w]hat's this case really about?'" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (second alteration in original) (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 550 (3d Cir. 2010)).

Defendants argue PDC's breach of fiduciary duty of loyalty claim should be dismissed because it is based on essentially the same conduct as PDC's breach of contract claim against Adams and thus implicates duties that arise out of Adams's NDA. Insofar as the breach of fiduciary duty claim is based on Adams's alleged breach of "his duty of secrecy owed to PDC *by virtue of the Adams NDA*," Compl. ¶ 150 (emphasis added), this argument has merit, as this

claim is on its face based on a contractually imposed duty. But the Complaint also alleges Adams breached his fiduciary duty of loyalty to PDC by "allow[ing] himself to . . . be induced by Nel to leave his current employer and join Nel in order to develop high pressure hydrogen diaphragm compressor technology that incorporates PDC Trade Secrets . . . [and to] file patent applications claiming to be the inventor of technology about which he learned only through his employment with PDC." *Id.* In addition, the Complaint alleges Adams "owed PDC a fiduciary duty of loyalty which included the obligation not to use or communicate PDC's confidential or proprietary information to compete with or otherwise injure PDC." *Id.* ¶ 149. Whether these allegations can support a claim for breach of fiduciary duty remains to be seen, but at this stage, when the scope and validity of the NDA remain in question, application of the gist of the action doctrine would be premature. Defendants also argue, in their reply brief, that PDC's breach of fiduciary duty claim should be dismissed because Adams did not owe PDC any post-employment duty of loyalty as a matter of law. It is not clear that this argument, which has not been fully briefed, is correct. *See Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 471 (Pa. 1964) (recognizing that, under Pennsylvania law, an employee "has no duty not to compete with a former employer upon severance of their relationship," absent an agreement to the contrary, but may not use "confidential material obtained . . . from a position of trust and confidence . . . in later competition to the prejudice of [the] employer" (citing Restatement (Second) of Agency § 396)); *see also Stream Cos. v. Windward Advertising*, No. 12-4549, 2013 WL 12114590, at *18 (E.D. Pa. Feb. 8, 2013) ("While the duty of loyalty generally terminates at the end of the agency relationship, the duty of an agent not to compete with the principal using the principal[']s trade secrets outlasts the agency relationship."). Accordingly, the Court declines to dismiss PDC's claim for breach of fiduciary duty of loyalty at this stage.

For all of the foregoing reasons, Defendants' motion to dismiss will be granted as to PDC's UTPCPL claim (Count 3 of the Complaint), which will be dismissed as withdrawn, but the motion will be denied as to PDC's DTSA, UTSA, conspiracy, and breach of fiduciary duty claims (Counts 1, 2, 6, and 9 of the Complaint). An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.